# EXHIBIT "B"

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                              :         Chapter 11
                                   :
WILMINGTON HOSPITALITY, LLC, :         Bankruptcy No. 01-19401DWS
                                   :
        Debtor.                    :

---

# ORDER

**AND NOW**, this 31st day of July 2003, a confirmation hearing having been held in

the above captioned case on the Debtor's Fourth Amended Plan dated of February 3, 2003

at which time the Debtor and all interested parties consented to confirmation pursuant to a

stipulation and modified plan to be filed;[1]

And the Stipulation and Fourth Amended Modified Plan dated February 7, 2003 (the

"Modified Plan") having been filed and an Order approving same having been entered in the

absence of any objections thereto on March 19, 2003;

And it appearing that notwithstanding this Court's approval of the modification of

Debtor's plan, a confirmation order was never entered;

---

[1] Aside from objection of Klehr, Harrison, an administrative creditor, which was resolved by the stipulation, the plan met the requirements of 11 U.S.C. §1129. Debtor's report of plan voting stated that all classes of claims and interest have either voted in favor of the plan or are not impaired, and there were no objections to confirmation from any party in interest including the United States Trustee.

It is hereby **ORDERED** that pursuant to 11 U.S.C. § 1129(a), the Debtor's Fourth Amended Modified Plan is confirmed *nunc pro tunc* to March 19, 2003;

**And** it is also **ORDERED** that this Court will retain subject matter jurisdiction of post-confirmation disputes only to the extent allowed by federal bankruptcy law, any language in the confirmed plan notwithstanding;

**And** it is further **ORDERED** that the debtor shall file monthly reports required by Local Bankr.R. 3021-1 **until the case is closed** and shall serve those reports upon the office of the United States trustee and upon any party in interest who requests such service.

The plan proponent shall send notice of this order as required by Fed.R.Bankr.P. 2002(f)(7).

DIANE WEISS SIGMUND
United States Bankruptcy Judge

Courtesy copies from
Chambers mailed to:

**COUNSEL FOR DEBTOR**
Albert A. Ciardi, III, Esquire
1900 Spruce Street
Philadelphia, PA 19103

**UNITED STATES TRUSTEE**
Dave P. Adams, Esquire
Office of the U.S. Trustee
601 Walnut Street
Curtis Center - Suite 950 West
Philadelphia, PA 19106

-2-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : |
| | : |
| WILMINGTON HOSPITALITY, LLC, | : Case No. 01-19401DWS |
| | : |
| Debtor. | : Chapter 11 |
| | : |

MODIFIED
FOURTH AMENDED PLAN OF REORGANIZATION
PROPOSED BY WILMINGTON HOSPITALITY, LLC
DEBTOR-IN-POSSESSION

Dated: February 7, 2003
C:\clients\Wilmington Hospitality\Pleadings\Plans\Wilm Hosp – mod Plan of Reorganization.6.wpd

Wilmington Hospitality, LLC, Debtor-in-Possession, (the "Debtor") hereby proposes the following Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq.

# ARTICLE I
## Definitions

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires. Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

1.1.    **"ACCOUNTS RECEIVABLE"** means any account as that term is defined in Section 9106 of the Delaware Uniform Commercial Code, and includes any right of the Debtor to payment for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance.

1.2.    **"ADMINISTRATIVE CLAIM"** means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under Section 503(b) of the Bankruptcy Code, and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.3.    **"ADMINISTRATIVE CLAIMANT"** means the holder of an Administrative Claim.

1.4.    **"ALLOWANCE DATE"** means the date a Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively.

1.5.    **"ALLOWED"** The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the Bankruptcy Schedules or List of Equity Security Holders (including any amendment thereto) filed in this case as of the Confirmation Date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor; (b) is set forth in a Proof of Claim or Interest properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof) and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

1.6.    **"ALLOWED CLAIM"** means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the

2

Bankruptcy Code, the Bankruptcy Rules or Orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

    1.7.   **"ALLOWED INTEREST"** shall mean an Interest (a) in respect to which a proof of interest has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of equity security holders prepared and filed with the Court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003 or an Order of the Court, or as to which any such objection has been determined by an order or judgment which is not longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding and as to which no appeal or certiorari proceeding pending.

    1.08.   **"ASSETS"** means all of the Debtor's property, real and personal, tangible and intangible, including, without limitation, cash, Accounts Receivable, equipment and inventory, goods, chattel paper, documents, instruments, money, fixtures, contract rights, general intangibles, insurance proceeds, tax refunds and good will, Causes of Action, claims and rights of any kind, wherever situated, together with the proceeds thereof, but excluding all Assets that were conveyed to Republic Bank (or its designee) under the terms of the Republic Stipulation (as hereinafter defined).

    1.09.   **"BANKRUPTCY CODE"** means Title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

    1.10.   **"BANKRUPTCY COURT"** or "COURT" means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

    1.11.   **"BANKRUPTCY RULES"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time promulgated by the Supreme Court of the United States.

    1.12.   **"BAR DATE"** means the last date fixed by Order of the Court for the filing of proofs of claim.

    1.13.   **"BUSINESS DAY"** means any day except a Saturday, Sunday, or other day on which commercial banks located in Wilmington, DE, are authorized by law to close.

    1.14.   **"CASE"** means the reorganization case of the Debtor under Chapter 11 of the Bankruptcy Code presently captioned "In re Wilmington Hospitality, LLC, 1-99-00574".

1.15. **"CAUSES OF ACTION"** means all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

1.16. **"CLOSING DATE"** means the date upon which the Purchaser completes the purchase of those assets sold to Purchaser under the Sale Agreement.

1.17. **"CLAIM"** means a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

1.18. **"CLAIMANT"** A person or entity holding a Claim or Interest (including, his, her or its successors, assigns, heirs, executors, or personal representatives).

1.19. **"CLASS"** means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan.

1.20. **"CONFIRMATION DATE"** means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to Section 1129 of the Bankruptcy Code becomes a Final Order.

1.21. **"CONFIRMATION HEARING"** means the hearing at which the Court considers confirmation of this Plan.

1.22. **"CONFIRMATION ORDER"** means the Order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.23. **"CONTESTED CLAIM"** means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a final order or a Claim which is scheduled as contingent or disputed.

1.24. **"CREDITOR"** means the holder of a Claim against the Debtor.

1.25. **"CREDITORS' COMMITTEE"** means the Official Committee of Unsecured Creditors of the Debtor appointed by the Office of the United States Trustee pursuant to Section 1102(a)(1) of the Code.

1.26. **"DEBTOR"** means Wilmington Hospitality, LLC. The term Debtor includes the Reorganized Debtor on and after the Effective Date.

1.27. **"DEFICIENCY CLAIM"** means, (1) with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

1.28. **"DISBURSING AGENT"** has the meaning given to such term in Section 5.4 hereof.

1.29. **"DISPUTED CLAIM"** means any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to in whole or in part in accordance with Section 13.1 hereof.

1.30. **"DISTRIBUTION"** means any payment by the Debtor to a Creditor on account of a Claim.

1.31. **"EFFECTIVE DATE"** means the date after the Confirmation Order becomes a Final Order. However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

1.32. **"FEE CLAIM"** means a Claim under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

1.33. **"FINAL ORDER"** means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

1.34. **"IMPAIRED CLASS"** means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.35. **"INSIDER"** means any "insider" as that term is defined in Paragraphs (B), (E) or (F) of Section 101(31) of the Bankruptcy Code.

5

1.36.  **"LIEN"** means, with respect to any of the Assets of the Debtor, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

1.37.  **"PERSON"** means a person within the meaning of Section 101(41) of the Bankruptcy Code.

1.38.  **"PETITION DATE"** means June 29, 2001, the date upon which the Debtor filed its petition.

1.39.  **"PETITION"** means the Petition for Relief, filed by the Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code commencing this proceeding.

1.40.  **"PLAN"** means this Second Amended Plan of Reorganization, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

1.41.  **"PLAN PROPONENT"** means the Debtor.

1.42.  **"PRIORITY NON-TAX CLAIM"** shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

1.43.  **"PRIORITY TAX CLAIM"** shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(8) of the Bankruptcy Code.

1.44.  **"PRO RATA"** means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears the aggregate amount of all Claims of such Class, including Contested Claims.

1.45.  **"PROPONENT"** means the Debtor.

1.46.  **"REJECTION CLAIM"** means any Claim for amounts due as a result of the rejection of any executory contract or lease which is rejected by the Debtor by Final Order.

1.47.  **"REPUBLIC STIPULATION"** means that certain Stipulation and Settlement Agreement for Relief from the Automatic Stay Under Section 362 dated November 29, 2001 executed by Republic Bank, Creditors Committee, and certain non-debtor third parties and the Order of the Bankruptcy Court dated December 4, 2001 approving the same.

1.48.  **"REORGANIZED DEBTOR"** means Wilmington Hospitality, LLC, as

reorganized and existing on the Effective Date.

1.49.  **"SCHEDULES"** means the schedules of assets and liabilities heretofore filed by the Debtor with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007, as they maybe amended from time to time.

1.50.  **"SECURED CLAIM"**  shall mean a Claim that is (a) secured by a valid, perfected and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a Claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such Secured Claim in such Assets.

1.51.  **"UNIMPAIRED CLASS"** means any Class of Claims which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.52.  **"UNSECURED CLAIM"** means any Claim, including a Rejection Claim or a Deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim, Secured Claim or Interest.

## ARTICLE II

## Classification of Claims

For the purpose of this Plan, Claims are divided into the following classes.  A Proof of Claim asserting a claim which is properly included in more than one class is included in each such class to the extent that it qualifies within the description of such class.

2.1.  **Class 1.  Secured Claim of Republic Bank.** Class 1 consists of the Allowed Secured Claim of Republic Bank.  Class 1 is impaired.

2.2.  **Class 2.  Secured Claim of Great American Leasing Co.** Class 2 consists of the Allowed Secured Claims, if any, of Great American Leasing Co. and any assignee, subsidiaries and affiliates.  Class 2 Claims are impaired under the Plan.

2.3.  **Class 3.  Secured Claim of Marlin Leasing Co.** Class 3 consists of the Allowed Secured Claims, if any, of Marlin Leasing Co. and any subsidiaries and affiliates.  Class 3 Claims are impaired under the Plan.

2.4.  **Class 4.  General Unsecured Claims.** Class 4 consists of all Allowed Unsecured Claims and all other Claims not otherwise classified herein.

7

2.5.    **Class 5  Interest Holders in Debtor.**  Class 5 consists of the Allowed Interests of the Debtor's sole shareholder.  Class 5 Interests are impaired under the Plan.

2.6.    **Claims and Equity Interests Classified.**  For purposes of voting and all confirmation matters, except as otherwise classified herein, all Claims (except for Administrative Claims and Priority Tax Claims), and all Interests are classified as set forth in this Article II of the Plan.

2.7.    **Administrative and Priority Tax Claims.**  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article IV of this Plan.

## ARTICLE III

### Treatment of Classes of Claim

3.1.    **Class 1.**        **(Secured Claim of Republic Bank).**  Class 1 is impaired. Except as otherwise provided herein, the treatment and consideration already received by Republic Bank in the Republic Stipulation shall be in full settlement, satisfaction, release and discharge of all of its respective claims and liens against the Debtor.  The terms of the Republic Stipulation shall be deemed incorporated by reference herein and shall survive confirmation of this Plan.

a.        **Amount of Allowed Secured Claim.**  On or about October 10, 2001, Republic filed a Motion for Relief from the Automatic Stay under Section 362 or, in the alternative, to dismiss the Chapter 11 case under Section 1112, or in the alternative, for abstention under Section 305 ("Republic Stay Motion").  The hearing on the Republic Stay Motion commenced on November 6, 2001 and continued on  November 7, 2001.

At the hearing on November 7, 2001, the Debtor withdrew the Sale Motion with respect to MSJ and requested that the Court approve a Hotel Purchase and Sale Agreement between Debtor and Reese Hotels, LLC ("Reese") which agreement was dated November 2, 2001 ("Hotel Sale Agreement").

On November 27, 2001, the Debtor entered into a stipulation and settlement agreement (the "Republic Stipulation") with the Bank in connection with the Chapter 11 proceeding.  Under the terms of the Republic Stipulation with the Bank, the Debtor could have satisfied its obligation to the Bank by completing a sale of the Radisson to Reese based upon the following relevant terms:

1.  Contemporaneously with the execution of the Republic Stipulation, the following documents were delivered to Blank Rome Comisky & McCauley LLP (the "Escrow Agent") who held the same in escrow.

    A.  The Debtor delivered a deed in lieu of foreclosure for the Radisson property, duly notarized and executed in recordable form.

    B.  The Debtor delivered a Stipulation for entry of final judgment in connection with the state court foreclosure complaint.

    C.  The Debtor delivered a special warranty deed conveying good and marketable title to approximately 19 acre parcel of real estate located adjacent to the Radisson property.

2.  The Debtor's principals delivered $350,000.00 to the Escrow Agent on or before December 5, 2001.

3.  The Debtor or the Debtor's principals were required to pay the Bank the sum of $13,850,000.00 on or before March 31, 2002, pursuant to the Hotel Sale Agreement with Reese.

Reese failed to close on the Radisson property within the requisite time period. Thus, pursuant to the terms of the Republic Stipulation, on or about March 31, 2002, as a result of the expiration of the period of time within which the Debtor could purchase the bank's claim, the Bank recorded the deed to the Radisson property formerly owned by the Debtor. As a result, the Allowed Secured Claim of the Republic Bank in the collateral of the Debtor has already been satisfied in accordance with the terms of the Republic Stipulation.

The only asset of the Debtor against which Republic Bank asserts a lien is the Radisson and other personal property (and non-debtor real estate referenced in the Republic Stipulation collectively "Republic Collateral"). The Debtor acknowledged that Republic Bank has a Claim against the Debtor in an amount in excess of $19,195,081.94 plus, interest, costs and fees since November 6, 2001. Subject to all of its other rights in the Republic Stipulation, Republic Bank (or its designee) has taken possession of and title to the Republic Collateral (and may proceed with foreclosure in Republic's discretion) in full settlement, satisfaction, release and discharge (except as may be otherwise set forth in the Republic Stipulation) of all of its respective claims and liens against the Debtor.

    3.2.    **Class 2.  Secured Claim of Great American Leasing Corporation**
Class 2 is impaired. Except as otherwise provided herein, the treatment and consideration to be received by Class 2 shall be in full and final satisfaction of any Class 2 claims.

a.     **Amount of Claim**. The Allowed Secured Claim shall be $295,000.

b.     **Payment of Allowed Claim**. The Court granted relief from the automatic stay to the Class 2 creditor. The Debtor no longer has possession of the collateral because Republic Bank has seized the hotel. The Class 2 creditor has not yet received its collateral. The Debtor hereby relinquishes the collateral to Class 2 in satisfaction of its secured claim. Additionally, the Debtor's principals are negotiating the release of certain guarantees directly with Great American.

c.     Deficiency Claim. Any Deficiency Claim resulting from the liquidation of the Class 2 collateral shall be a Class 4 unsecured claim.

3.3.     **Class 3.   Secured Claim of Marlin Leasing** Class 3 is impaired. Except as otherwise provided herein, the treatment and consideration to be received by Class 3 shall be in full and final satisfaction of any Class 3 claims.

a.     **Amount of Claim**. The Allowed Secured Claim shall be $21,000.

b.     **Payment of Allowed Claim**. The claim shall be paid by the Debtor agreeing to relief from the stay to allow the Class 3 creditor to recover and sell its collateral. Any deficiency shall be a Class 4 claim.

3.4.     **Class 4.     (Unsecured Claims)**. Class 4 is impaired. The treatment and consideration to be received by holders of Class 4 Allowed Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims and Liens. Class 4 consists of all Allowed Claims not otherwise classified herein. Class 4 creditors shall receive up to 100% of the Allowed Claim, to the extent that the Debtor obtains a recovery against New Castle County, or any of the professionals against whom the Debtor has commenced litigation. The Debtor shall make a payment through the Disbursing Agent within 60 days of receipt of any proceeds received from such recovery, net of attributable attorney's fees. Payment amongst Allowed Class 4 claimants will be distributed 50% pro-rata to trade creditor unsecured claims and 50% to the Debtor's principals unsecured claims as it is received. To the extent the Class 5 creditors advance funds to professionals to prosecute any claims, such advance(s) are waived at the time of the confirmation hearing.

3.5     **Class 5.   Interest Holder**. Class 5 is impaired. The holders of Class 5 interests, Joseph Capano and Albert Vietri, shall remain but shall receive no distribution until Classes 1 through 4 have been paid in full.

## ARTICLE IV

## TREATMENT OF UNCLASSIFIED CLAIMS

10

4.1.   **Administrative Claims.**  All Administrative Claims shall be treated as follows:

      a.   **Time for Filing Administrative Claims.**  The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within (30) days after the Effective Date.  Such notice must include at minimum (i) the name of the holder of the claim, (ii) the amount of the claim and (iii) the basis of the claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

      b.   **Time for Filing Fee Claims.**  Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within sixty (60) days after the Effective Date.  Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged.

      c.   **Allowance of Administrative Claims.**  An Administrative Claim with respect to which notice is required and has been properly filed pursuant to Section 4.1(a) of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim.  If an objection is filed within such (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  An Administrative Claim that is a Fee Claim, and with respect to its fee application has been properly filed pursuant to Section 4.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

      d.   **Payment of Allowed Administrative Claim.**  Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.  Each professional person that holds an Allowed Fee Claim for services rendered and costs incurred through the Effective Date shall be paid by the Debtor.

      At the time of the filing of this disclosure statement the Debtor acknowledges that the estate does not have sufficient funds to pay the approximately $200,000.00 in current administrative claims.  If the debtor does not have sufficient funds at the time of confirmation to pay all Allowed Administrative Claims or is unable to reach agreements with all Allowed Administrative claimants regarding the payment of the administrative claims, the Debtor's Plan of Reorganization is not confirmable.  However, if administrative creditors agree to support the Plan of Reorganization and defer payment, to the extent that the Debtor

obtains a recovery against New Castle County, or any of the Design Professionals against whom the Debtor has commenced litigation, those funds, net of attorney's fees, will be used first to pay Allowed Administrative Claims. Once all Allowed Administrative Claims are paid in full, payment amongst Allowed Class 4 claimants will be distributed as set forth in section 3.4 above.

Joseph Capano has agreed to waive any claim to be reimbursed ahead of other creditors for monies advanced in support of the litigation against the Design Professionals or New Castle County and has guaranteed to continue funding the litigation against New Castle County and the Design Professionals as long as the case remains in Chapter 11.

e. **Professional Fees Incurred After the Effective Date.** Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes. In the event of such dispute, the Debtor shall pay that portion of the fees, if any, which is not in dispute, punctually.

f. Joseph Capano intends to advance funds to certain professionals on account of approved administrative claims. All funds advanced by Joseph Capano on account of the administrative claims of the reorganization professionals shall have the same priority as the administrative claim paid by the advanced funds.

4.2. **Treatment of Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor (i) the amount of such holder's Allowed Claim on the Effective Date; (ii) the amount of such holder's Allowed Claim, plus interest accrued at the applicable statutory rate, in equal monthly cash payments in accordance with the provisions of Subsection 1129(a)(9)(c) of the Bankruptcy Code commencing on the Effective Date or (iii) such other treatment as may be agreed upon in writing by the Debtor and such Creditor.

## ARTICLE V

### Provisions For Execution of The Plan

5.1. **Retention of Assets.** The Debtor shall retain all Causes of Action and all other Assets not returned to the Class 1, 2 or 3 creditor, including but not limited to the following:

1. Any litigation against New Castle County and any former agent, employee or elected official.

2. All other litigation against the professionals who designed Debtor's

hotel.

       3. All net proceeds available as the interest holder in the Spring Meadow Homes, Inc. bankruptcy.

    5.2. **Execution of Documents.** Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

    5.3. **Alternations, Amendments or Modifications.** This Plan may be altered, amended, or modified by the Proponent before or after the Confirmation Date, as provided in Section 1127 of the Code.

    5.4. **Disbursing Agent.** Melvin Levy shall be the Disbursing Agent herein ("Disbursing Agent"). The Disbursing Agent shall have the sole and exclusive right to make the distributions required by the Plan provided, however, that the Disbursing Agent shall be required to make the distributions and payments provided for herein. The Disbursing Agent may hold or invest the funds in one or more accounts, provided that all investments shall be made in accordance with 11 U.S.C. Section 345.

    5.5. **Final Decree.** After the Effective Date, the Reorganized Debtor may file a Motion to close the case and request that a final decree be issued.

    5.6. **Corporate Charter.** The Debtor's corporate charter will be amended after the Effective Date to any extent necessary to permit the Debtor to implement the terms of this Plan.

    5.7. **Retention and Enforcement of Claims.** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all claims arising or assertable at any time under the Bankruptcy Code, including under Sections 510, 542, 543, 544, 545, 548, 549, 550, 552 and 553.

## ARTICLE VI

### Provisions Governing Distributions
### and General Provisions

    6.1 Distributions pursuant to this Plan shall be made by the Disbursing Agent as provided herein and shall be made, unless otherwise provided herein, on the Effective Date, or as soon as practicable thereafter or as may be otherwise ordered by the Court.

    a. **Delivery of Distributions.** Distributions and deliveries to holders

of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest. The Reorganized Debtor shall use reasonable efforts to obtain current addresses of creditors to enable distributions to be made hereunder. All claims for undeliverable distributions must be made to the Disbursing Agent within ninety (90) days after the respective distribution was made. After that date, all unclaimed property will become property of the Reorganized Debtor, and the Claim of any holder with respect to such property will be discharged and forever barred.

b.    **Means of Cash Payment.** Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank. All cash distributions will be made by the Disbursing Agent.

c.    **Time Bar to Cash Payments.** Checks issued by the Disbursing Agent in respect of Allowed Claims will be null and void if not cashed within 90 days of the date of their issuance. Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim with respect to which the check originally was issued. Any claim in respect of such a voided check must be made on or before ninety (90) days after the date of issuance of the check. After the date, all claims in respect of void checks will be discharged and forever barred and the cash, including interest earned shall be revested in the Reorganized Debtor as a Residual Asset.

d.    **Setoffs.** The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any claims of any nature whatsoever the Debtor may have against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor or Claimant of any such claim the Debtor may have against such Claimant or any claim or defense such claimant may have against the Debtor.

e.    **De Minimis Distributions.** No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to Debtor to make such a payment.

f.    **Saturday, Sunday or Legal Holiday.** If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

6.2.    **Notices.** Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified mail, return

14

receipt requested, and if sent to:

    (a)    If to the Reorganized Debtor, addressed to:

        Wilmington Hospitality, LLC
        1601 Concord Pike, Suite 27
        Wilmington, DE 19803

    (b)    With copies to Counsel for the Debtor:

        Albert A. Ciardi, III, Esquire
        Ciardi, Maschmeyer & Karalis, P.C.
        1900 Spruce Street
        Philadelphia, PA 19103

    6.3.  **Default.**  No default shall be declared under this Plan unless any payment due under this Plan shall not have been made within 10 days after written notice to the Reorganized Debtor and counsel for the Debtor of failure to make payment when due under the Plan.

## ARTICLE VII

### Executory Contracts

    7.1.  **Rejection.**  All executory contracts and unexpired leases shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code as of the Confirmation Hearing.

    7.2.  **Damages.**  Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease will constitute a Rejection Claim, if, but only if, a proof of claim therefore shall be filed with the Clerk of the Court within thirty days after the date of rejection. If a Rejection Claim becomes an Allowed Claim then it shall constitute a general unsecured claim under Class 4.

## ARTICLE VIII

### Cramdown Provisions and Confirmation Request

    8.1.  In the event that sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provision of Section 1129(b) of the Bankruptcy Code.

## ARTICLE IX

## Modification of the Plan

9.1. **Pre-Confirmation Modification.** At any time before the Confirmation Date, the Plan may be modified by the Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

9.2. **Pre-consummation Modification.** At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Proponent and upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

9.3. **Non-Material Modifications.** At any time, the Proponent may, without the approval of the Court so long as it does not materially or adversely effect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## ARTICLE X

## Retention of Jurisdiction

10.1. The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a)  to determine any and all objections in the allowance of claims and amendments to schedules;

(b)  to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c)  to determine any and all disputes arising under or in connection with the Plan, including, but not limited to, any default remedies granted herein, and the sale of any of the Debtor's assets, collection or recovery of any assets;

(d)  to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

16

(e)   to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f)   to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

(g)   to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h)   to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i)   to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j)   to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)   to enforce all provisions under the Plan;

(l)   to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## ARTICLE XI

### Causes of Action

11.1.   **Suits, Etc.**   Proponent reserves the right to initiate or continue any litigation or adversary proceeding permitted under Title 11 of the United States Code and applicable Federal Rules of bankruptcy procedure with respect to any Cause of Action, except if provided to the contrary herein.  The Debtor shall retain all Causes of Action, including but not limited to the current litigation against New Castle County and any former agent, employee or elected official and the current litigation against the professionals who designed Debtor's hotel ("Design Professionals").  The Debtor refers all readers to pages 10-12 of the Debtor's Disclosure Statement for a complete description of all Causes of Action.  Mr. Capano, Mr. Vietri and companies owned by either of them may be Plaintiffs in the litigation against the Design Professionals.   All of the Plaintiffs in the Debtor's litigation against the Design Professionals and the County have agreed that all proceeds of the litigation regardless of the source or any

17

court or other allocation of the same among the Plaintiffs shall be paid to the Debtor for distribution under the Plan.

11.2. **Powers.** The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its discretion, subject to the rights, if any, of Class 1 to the Cause of Action.

## ARTICLE XII

### Miscellaneous

12.1. **Choice of Law.** Except to the extent superseded by the Bankruptcy Code or other federal law (or as provided in the Republic Stipulation), the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

12.2. **Payment of Quarterly Fees.** All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall continue to be paid pursuant to the provisions of such Section.

12.3. **Automatic Stay.** The automatic stay of Section 362 of the Code shall remain in effect until the Effective Date except to the extent relief has already been granted.

12.4. **Severability.** Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

12.5. **Successors and Assigns.** The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

12.6. **Binding Effect.** Subject to the occurrence of the Effective Date, the Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, the holders of Equity Interests, and their respective successors and assigns.

12.7. **Withholding and Reporting Requirements.** In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

## ARTICLE XIII

## Provisions for Resolving and Treating Claims

**13.1. Objections to Claims; Prosecution of Contested Claims.** The Debtor may object to allowance of Claims filed with the Court and all objections to the allowance of Claims shall be litigated to Final Order or compromised and settled, subject to approval of the Bankruptcy Court after notice only to the Debtor, the holder of such Claim, and parties requesting notices in the case pursuant to applicable Bankruptcy Rules, and a hearing. Failure to object to any Claim for purposes of voting on the Plan shall not be deemed a waiver of the right to object to such Claim at any later date.

**13.2. Late Filed Claims.** No objection shall be filed with respect to any Proof of Claim filed after the Bar Date, and the holder of any such late filed Proof of Claim shall receive no distribution under the Plan, except as specifically ordered by the Bankruptcy Court, after notice to the Debtor, counsel for the Debtor and such parties as the Court may direct, and a motion and hearing thereon. Any such motion shall be filed on or before the Effective Date or the holder of such Claims shall be forever barred and all such Claims shall be discharged. Nothing herein shall constitute a waiver by the Debtor of any counterclaims, setoffs, or of any defenses with respect to such late filed Proofs of Claim, including defenses as to the timeliness of the filing of such Proofs of Claim.

**13.3. No Distributions Pending Allowance.** No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim.

[INTENTIONALLY BLANK]

**13.4. Distributions After Allowance.** Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs as soon as practicable after the date that the order or judgment of the Court allowing the Claim becomes a Final Order.

**Wilmington Hospitality, LLC**

By: _____/s/_____

Joseph L. Capano, Sr.

19

CIARDI, MASCHMEYER & KARALIS, P.C.

By: _____
ALBERT A. CIARDI, III., ESQUIRE
DAVID W. deBRUIN , ESQUIRE
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for Debtor

Dated: February 7, 2003

20