# EXHIBIT "C"

SOSID: 0023695
Date Filed: 6/7/2004 9:06:00 AM
Effective: 6/11/2004
Elaine F. Marshall
North Carolina Secretary of State
C200415500319

## ARTICLES OF MERGER
### OF
### REPUBLIC BANK
### INTO BRANCH BANKING AND TRUST COMPANY

Pursuant to Sections 55-11-05 and 55-11-07 of the General Statutes of North Carolina, the undersigned corporation does hereby submit the following Articles of Merger as the surviving corporation in a merger between a domestic business corporation and a foreign business corporation.

1.    The name of the surviving corporation is Branch Banking and Trust Company, a corporation organized under the laws of North Carolina; the name of the merged corporation is Republic Bank, a corporation organized under the laws of Florida.

2.    Attached is a copy of the Plan of Merger that was duly approved in the manner prescribed by law by each of the corporations participating in the merger.

3.    With respect to Branch Banking and Trust Company, shareholder approval was required for the merger and the Plan of Merger was approved by the shareholders as required by Chapter 55 of the North Carolina General Statutes.

4.    With respect to Republic Bank, shareholder approval was required for the merger, and the Plan of Merger was approved by the shareholders as required by Chapter 55 of the North Carolina General Statues.

5.    The merger is permitted by the laws of the State of Florida.

6.    Republic Bank has complied or shall comply with the applicable laws of the State of Florida.

7.    These Articles will become effective at 11:59 o'clock p.m., on June 11, 2004.

This is the 19th day of May, 2004.

Branch Banking and Trust Company

By: _____
Robert E. Greene, President

## AGREEMENT OF MERGER

This AGREEMENT OF MERGER ("Agreement of Merger") is made and entered into as of this 6th day of May, 2004, by and between REPUBLIC BANK, a Florida chartered commercial bank having its principal place of business at 111 Second Avenue, N.E., Suite 211, Saint Petersburg, Florida 33701, and BRANCH BANKING AND TRUST COMPANY ("BB&T-NC"), a North Carolina chartered commercial bank having its principal place of business at 200 West Second Street, Winston-Salem, North Carolina 27101.

### WITNESSETH

WHEREAS, as of March 31, 2004, Republic Bank had total assets of approximately $2.9 billion and had 11,073,000 shares of common stock outstanding, par value $2.00 per share, and as of April 14, 2004 all of the issued and outstanding shares of are owned by BB&T Corporation ("BB&T");

WHEREAS, as of March 31, 2004, BB&T-NC had total assets of $70.8 billion and had 4,887,494 shares of common stock outstanding, par value $5.00 per share, all of the issued and outstanding shares of which are owned by BB&T;

WHEREAS, the respective Boards of Directors of Republic Bank and BB&T-NC have determined that the merger of Republic Bank with and into BB&T-NC, under and pursuant to the terms and conditions set forth or referred to herein (said transaction being hereinafter referred to as the "Merger"), would be in the best interest of the respective institutions, and their shareholders; and

WHEREAS, on December 1, 2003, Republic Bancshares, Inc. ("Republic") and BB&T entered into an Agreement and Plan of Reorganization contemplating the merger of Republic with and into BB&T;

WHEREAS, in connection with and subject to the consummation of the merger between Republic and BB&T contemplated the foregoing, Republic Bank and BB&T-NC have agreed upon the terms and conditions of the Merger as set forth herein and the respective Boards of Directors of Republic Bank and BB&T-NC have adopted resolutions approving this Agreement of Merger;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement of Merger, the parties to this Agreement of Merger hereby agree as follows:

## ARTICLE I

### Terms and Conditions of the Merger

1.1.    In General.  Subject to the terms and conditions of this Agreement of Merger, on the Effective Date (as defined herein), Republic Bank shall be merged with and into BB&T-NC pursuant to the provisions of, and with the effect provided in Chapter 53 of the General Statutes of North Carolina and 12 U.S.C. §§ 1828(c)(2)(C) and 1831u. Republic Bank and BB&T-NC may be collectively referred to herein as the "Merging Banks."

1.2.    Effect of Merger.  On the Effective Date, the separate existence of Republic Bank shall cease and BB&T-NC as the surviving entity, shall continue unaffected and unimpaired by the Merger and shall continue to operate under the name "Branch Banking and Trust Company" (BB&T-NC as existing on and after the Effective Date being hereinafter sometimes referred to as the "Surviving Institution").

1.3.    Business of the Surviving Institution.  The business of the Surviving Institution shall be that of a North Carolina chartered commercial bank and shall be conducted at the main office of the Surviving Institution, which shall be located at 200 West Second Street, Winston-Salem, North Carolina 27101, and at its legally established branches, including the branches the Surviving Institution acquires from Republic Bank as a result of the Merger.

## ARTICLE II

### Effective Date

2.1.    Effective Date of Merger.  A certified copy of this Agreement of Merger, Articles of Merger, and of the approval of the North Carolina Commissioner of Banks evidencing the transactions contemplated herein shall be delivered for filing to the North Carolina Secretary of State as provided in Section 53-13 of the General Statutes of North Carolina.  The Merger shall be effective at the time and on the date specified in the Articles of Merger (such date and time being herein referred to as the "Effective Date"), which shall not be earlier than the effective date of the merger between Republic and BB&T.

2.2.    As of the Effective Date:

(a)    The corporate existence of each of the Merging Banks shall be merged into and continued in the Surviving Institution.

2

(b)     In accordance with Sections 53-13, 53-17 and 55-11-06 of the North Carolina General Statutes, all of the property, assets and rights of every kind and character of Republic Bank (including, without limitation, all real, personal or mixed property, all debts due on accounts, all other choses in action and all and every other interest of or belonging to or due Republic Bank, whether tangible or intangible) shall be transferred to and vest in BB&T-NC, and BB&T-NC shall succeed to all the rights, privileges, immunities, powers, purposes and franchises of a public and private nature (including all trust and fiduciary properties, powers and rights) of Republic Bank, all without conveyance, assignment or further act or deed; and BB&T-NC shall become responsible for all of the liabilities, duties and obligations of every kind and description (including duties as trustee or fiduciary) of Republic Bank as of the Effective Time.

(c)     The Surviving Institution shall be liable for all liabilities of every kind and description, including liabilities arising out of the operation of a trust department, of each of the Merging Banks existing immediately prior to the Effective Date, to the extent provided by law.

## ARTICLE III

### Conversion of Republic Bank Common Stock

As of the Effective Date, each outstanding share of the common stock of BB&T-NC shall remain outstanding as a share of common stock of the Surviving Institution and each outstanding share of common stock of Republic Bank shall be cancelled and retired with no consideration to be issued or paid in exchange therefor.

## ARTICLE IV

### Board of Directors of the Surviving Institution

As of the Effective Date, the following named persons shall serve as the Board of Directors of the Surviving Institution until the next annual meeting of the shareholders or until such time as their successors have been elected and have qualified:

| | |
|---|---|
| John A. Allison, IV | John V. Andrews |
| Phyllis H. Arnold | W. Watson Barnes, Sr. |
| W. E. Carter | James L. Clayton |
| Jesse W. Corbett, Jr. | James A. Faulkner |
| Thomas K. Ferguson | C. M. Gatton |
| L. H. Ginn, III | J. Littleton Glover, Jr. |

3

Robert E. Greene                Robert F. Hatcher
I. Patricia Henry               Eric C. Kendrick
Kelly S. King                   William R. Klich
Valeria Lynch Lee               A. Patrick Linton
Dan R. Moore                    Charles A. Patton
Alfred B. Whitt                 Henry G. Williamson, Jr.

## ARTICLE V

### Certificate of Incorporation and
### By-Laws of Surviving Institution

The Certificate of Incorporation and the By-Laws of BB&T-NC in effect immediately prior to the Effective Date shall be the Certificate of Incorporation and the By-Laws of the Surviving Institution.

## ARTICLE VI

### General Provisions

6.1.    Entire Agreement.  This Agreement of Merger contains the entire agreement between the parties with respect to the transaction contemplated hereunder, and supersedes any and all prior arrangements or understandings with respect thereto. This Agreement of Merger shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

6.2.    Amendment.  At any time before the Effective Date, the Merging Banks, by mutual consent of their respective Boards of Directors, may amend this Agreement of Merger.

6.3.    Termination.  At any time before the Effective Date, this Agreement of Merger may be terminated by mutual consent of the parties, notwithstanding any prior shareholder vote or approval by mutual consent of the Boards of Directors of the Merging Banks; provided, however, that this Agreement of Merger shall automatically terminate upon any termination of the Agreement and Plan of Reorganization, dated as of December 1, 2003, by and between Republic and BB&T.

6.4    Shareholder Vote.  This Agreement of Merger shall be subject to the approval, ratification and confirmation by the affirmative vote of the shareholder of each of the Merging Banks.

4

6.5.    Applicable Law. This Agreement shall be governed by the laws of the State of North Carolina.

6.6.    Headings. The headings contained in this Agreement of Merger are for reference purposes only and are not part of this Agreement of Merger.

6.7.    Counterparts. This Agreement of Merger may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS THEREOF, each of the Merging Banks has caused this Agreement of Merger to be executed by their respective duly authorized officers and their corporate seals to be hereunto affixed and attested by their officers thereunto duly authorized, all as of the day and year first above written.

ATTEST:                                              REPUBLIC BANK

By:                                          By:

                                                     Name:  William R. Klich
                                                     Title:  Chief Executive Officer

                      [SEAL]

ATTEST:                                              BRANCH BANKING AND TRUST
                                                     COMPANY

By:                                          By:

                                                     Name:  Robert E. Greene
                                                     Title:  President

                      [SEAL]

5

OFFICE OF THE COMMISSIONER OF BANKS

**CERTIFICATE OF AUTHORITY
FOR ARTICLES OF MERGER**

Branch Banking and Trust Company, a banking corporation organized and existing under the laws of the State of North Carolina, and located in Winston-Salem, Forsyth County, North Carolina, and Republic Bank, a commercial bank organized and existing under the laws of the State of Florida, with its principle place of business in Saint Petersburg, Florida, have submitted to the Commissioner of Banks for the State of North Carolina, Articles of Merger between the said banks for the purpose of merging Republic Bank into Branch Banking and Trust Company with the surviving bank being Branch Banking and Trust Company.

I hereby certify that these Articles of Merger were duly approved by the North Carolina State Banking Commission on the 17th day of March, 2004, as appears in the official records of the Commission filed with the Office of the Commissioner of Banks and kept under my direction and supervision. Authority to file the Articles is, therefore, granted.

This the 3rd day of June, 2004.

Joseph A. Smith, Jr.
Commissioner of Banks

# EXHIBIT "D"

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :          Chapter 11
                                               :
WILMINGTON HOSPITALITY LLC,   :          Bankruptcy No. 01-19401DWS
                                               :
        Debtor.                             :

## MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court, on remand from the District Court, is the Motion of Great America

Leasing Corporation ("GALC") for Modification of Stipulation (the "Modification Motion")

and the Objection thereto and Cross-Motion for Abstention (the "Cross-Motion") of Republic

Bank ("Republic").  For the reasons which follow, both motions will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The issues before me are legal ones, requiring no resolution of disputed facts.  While

the parties made no factual record,[1] the following factual background is based upon the

_____

[1] At the hearing on February 10, 2001, the Court invited Republic and GALC to stipulate
to a relevant factual record, noting that while Republic's Cross-Motion had attached to it numerous
documents, documents attached to pleadings are not evidence.  In response to my invitation,
Republic unilaterally bombarded the Court with a foot-high stack of documents.  Many pertain to
an action between GALC and Republic in the state court of Delaware, as discussed in more detail
(continued...)

docket, my own knowledge of the history of prior judicial proceedings and decisions in this Chapter 11 bankruptcy case and facts which are not in dispute.[2]

The Debtor – who notably has no interest whatsoever in these motions -- was at one time the owner of a parcel of property in Delaware, upon which it built a multimillion dollar Radisson Hotel (the "Hotel"). For reasons that are currently the subject of litigation, the Hotel's size exceeded governmental restrictions and New Castle County refused to allow the hotel to open. Without any income and the Hotel thus vulnerable to foreclosure by Republic which was owed $19 million and had initiated foreclosure proceedings, Debtor filed this bankruptcy petition on June 29, 2001.

Of relevance here, the Debtor leased the Hotel's kitchen equipment (the "Equipment") from GALC pursuant to a lease agreement. On July 18, 2001, GALC sought relief from the automatic stay (the "GALC Stay Motion"), which the Debtor did not oppose. After consensual adjournment of the hearing on that matter, the Debtor and GALC agreed to an Order which on October 1, 2001 lifted the automatic stay "so that Great American Leasing

---

(...continued)

below. While I may take judicial notice of such public documents, I fail to see their relevance. As I will discuss below, the dispute pending in the Delaware court is not before me and I need not address those issues.

[2] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). Additionally, while a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules).

may retrieve their equipment presently in the possession of the debtor at the Radisson Hotel, 401 Airport Road, Wilmington, DE." Doc. No. 96.

Shortly thereafter, Republic followed suit seeking relief from the automatic stay, or in the alternative dismissal, on October 10, 2001 (the "Republic Stay Motion"). Doc. No. 97. The Debtor and Official Committee of Unsecured Creditors (the "Committee") filed objections to the Republic Stay Motion but GALC did not. A hearing was scheduled for November 11, 2001 but continued as the parties were attempting to reach a consensual resolution. On November 29, 2001, a "Stipulation and Settlement Agreement for Relief from the Automatic Stay" (the "Stipulation") by and between Republic, Debtor, Joseph Capano, Albert A. Vietri, JYD Inc.[3] and the Committee was filed. Doc. No. 145. Notably GALC was not a party to the Stipulation. The Stipulation is a fifteen page document, the purpose of which was to allow the Debtor a finite amount of time to locate a buyer for the Hotel and pay off Republic or transfer the Hotel to it without further legal action. It contains, inter alia, (i) an acknowledgement of the Republic debt, confirmation of Republic's liens and the provision of releases in favor of Republic; (2) consent to stay relief with prejudice and subject to the further terms of the Stipulation, agreement that Republic can proceed to foreclosure without further order of this Court; (3) delivery to Republic's counsel as escrow agent of nine documents effectuating the transfer of the Hotel to Republic (the "Foreclosure Documents") and the releases; (4) the terms by which Debtor might retain the Hotel and the

---

[3] Capano and Vietri are principals of Debtor and guarantors of the Republic debt. JYD is their related company.

-3-

consequences of its failure to fulfill those terms. In short, Republic gave the Debtor until December 5, 2001 to make a payment of $350,000 ("Initial Payment"). If Debtor did not make the payment by December 5, 2001, the escrow agent would turn over the Foreclosure Documents to Republic, who was authorized by the Stipulation to otherwise proceed to exercise all its rights and remedies. Stipulation ¶ 6. As part of this paragraph of the Stipulation, the parties agreed to the following language:

> If Republic records the Hotel deed, then Republic shall have ten (10) days from the date of recordation to advise WH and counsel for GLC whether Republic (in its sole and absolute discretion) will be paying off the GLC Lease.[4] In the event that Republic (in its sole discretion) elects not to assume/payoff the GLC Lease, then WH and/or GLC (at the election of GLC) shall remove the Kitchen Equipment within 20 days of a written request for Republic or thereafter, the Kitchen Equipment will be deemed abandoned to Republic (free and clear of any claims of GLC and WH).

If Debtor made the Initial Payment in a timely manner, it would then have an option to satisfy or assign the Bank's claim for $13,650,000 (by December 31, 2001) or $13,850,000 (by March 31, 2002). Failure to make such payments by the negotiated dates would result in the same consequence as failure to make the Initial Payment, i.e., transfer of the Hotel to Republic or its assignee. Stipulation ¶7.[5]

The Stipulation was accompanied by a two page proposed "Order Granting Republic Bank Relief from the Automatic Stay Provisions of Section 362 and Approving Stipulation Regarding Relief from the Automatic Stay and Authorizing Use of Cash Collateral Under

---

[4] WH refers to Debtor and GLC refers to Great American Leasing Corp. or GALC.

[5] While there is no reference to GALC in this paragraph, it appears that the parties assume the paragraph 6 undertakings are applicable to a recording of the deed pursuant to paragraph 7.

-4-

Section 363" drafted by the parties. Doc. No. 146. Notably the proposed Order was submitted on advice to the Court of the consent of Republic, Debtor and the Committee to the stay relief in favor of Republic so long as granted under the terms of the Stipulation. GALC was not mentioned. The Order had four provisions: (1) stay relief was granted to Republic; (2) the Stipulation was approved, Debtor was authorized to execute it and the relief granted to Republic was subject to it; (3) Debtor was authorized to use Republic's cash collateral; (4) the Court retained jurisdiction to "resolve any disputes which may arise with respect to the interpretation and enforcement of the terms and conditions of the Stay Stipulation." Id.

While the Debtor made the Initial Payment in compliance with Paragraph 6 of the Stipulation, its attempted sale of the Hotel to exercise the Paragraph 7 option was unsuccessful, and Republic filed its documents, obtaining its foreclosure judgment and ownership of the Hotel.

On June 11, 2002 and after the Hotel was lost to Republic, GALC filed the Modification Motion which is now before me. The Modification Motion recites a dispute between GALC and Republic over the removal of the Equipment. However, the Modification Motion does not seek enforcement of the Stipulation. Instead GALC seeks a narrowly tailored modification of the Stipulation to give it an additional sixty days, i.e., until August 14, 2002, to remove the Equipment from the Hotel.

On June 12, 2002, I denied the Modification Motion without a hearing[6] (the "June 12 Order"). My decision had two bases: (1) lack of subject matter jurisdiction; and (2) the absence of a legal basis to modify the stipulation, i.e., a court cannot rewrite the parties' contract. GALC appealed my decision to the District Court, raising only the issue of subject matter jurisdiction. Doc. No. 193 ("Designation of Items to Be Included on the Record and Statement of Issues Presented").

While its appeal before the District Court was pending, GALC filed a complaint (the "State Court Complaint") on June 24, 2002 against Republic in the Court of Chancery, New Castle, Delaware (the "State Court Action") seeking, inter alia, injunctive relief, namely to enjoin Republic from taking any action with regard to the Equipment and to compel its return.[7] The only reference to the Stipulation is found in Count VI which alleges that GALC

---

[6] Code § 102(1)(b) authorizes an act without hearing. I noted in the Order that I had previously held a conference call with counsel and explained my reasoning for not providing GALC relief. I took this step to allow GALC to quickly pursue its remedies in a court of appropriate jurisdiction, i.e., Delaware state court. As noted below, it did so but for reasons I find hard to understand is still pursuing the Modification Motion instead of its pending state court action. When I questioned its counsel on this issue, he indicated that GALC had no preference for this jurisdiction over the state court but that Republic had taken the position in the state court that the bankruptcy court was the appropriate venue, a position belied by its request now that I abstain. Hopefully this Memorandum Opinion will put matters to rest here, and the parties will proceed in the state court to reach the real issues between them that are framed there.

[7] The Complaint was submitted as a stipulated document. The bulk of the relief prayed for in the Complaint is injunctive, which is understandable given that the parties are in the Court of Chancery. See Bird v. Lida, Inc., 681 A.2d 399 (Del.Ch. 1996) ("The Court of Chancery's jurisdiction as a general matter is limited to suits in which a traditional basis for equitable jurisdiction appears"). I note that the prayer for relief does end with a request for punitive damages as well as attorney's fees, costs, and interest.

is a third party beneficiary under the Stipulation which Republic has breached.[8]  From the Answer to the State Court Complaint and arguments made in Republic's memoranda in this contested matter, Republic's position is that GALC is no longer entitled to the Equipment under either the Stipulation or Delaware law.

On December 2, 2002, the District Court reversed my June 12 Order, finding that I had "related to" jurisdiction based on the retention of jurisdiction provision in my Order, and remanded the Modification Motion back to me for a hearing.[9]  GALC and Republic have informed me that the Chancery Court has held the State Court Action in suspense pending my determination of the Modification Motion.  Contrary to the broader issues framed by the State Court Complaint, the sole request for relief before this Court as embodied in the Modification Motion, is that I modify the Stipulation to provide GALC with additional time to remove the Equipment from the Hotel now owned by Republic.[10]

---

[8] The remaining counts assert other state law causes of action not related to the Stipulation: conversion, replevin, tortious interference with contract tortious interference with prospective business relations, and declaratory judgement.

[9] In the June 12 Order, I had concluded that the dispute described in the Modification Motion involved GALC and Republic and as such, had no conceivable effect on the Debtor or the bankruptcy estates. Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). The District Court agreed but concluded that since I had retained jurisdiction to resolve any disputes which may arise with respect to the interpretation and enforcement of the terms and conditions of the Stay Stipulation, subject matter jurisdiction existed. The District Court Order was silent as to the unappealed second basis for my June 12 ruling, i.e. that I could not modify the parties' agreement, and did not elaborate on the purpose of the hearing I was directed to hold.

[10] Only the State Court can give the parties complete relief as to the issues in dispute which adds to my puzzlement over GALC's pursuit of the Modification Motion. Even if I were to extend the time GALC has to remove the Equipment, it is clear at the conclusion of that time Republic would not release it given the position it has taken in its Answer to the State Court Complaint. With respect to the litigation that would inexorably follow, Republic's request for abstention would be ripe for consideration. Thus, it does not follow that the issues would ever be heard in this forum even
(continued...)

-7-

## DISCUSSION

As I have noted above, the Modification Motion comes to me again on remand from the District Court which reversed my prior conclusion that I lacked subject matter jurisdiction over the matter. I am mandated to follow the District Court's holding as the law of the case. Casey v. Planned Parenthood of Southeastern Pa., 14 F.3d 848, 856 (3d Cir. 1994). However, my June 12 Order also held that I lacked the authority to modify an agreement negotiated and entered into freely by the parties. This finding was not appealed by GALC, and the law of the case doctrine therefore works in a different manner:

> When a court of appeals reverses a judgment and remands for further consideration of a particular issue, leaving other determinations of the trial court intact, the unreversed determinations of the trial court normally continue to work an estoppel.

Cowgill v. Raymark Industries, Inc., 832 F.2d 798, 802 (3d Cir. 1987).

Whether spoken of as estoppel, waiver, or law of the case, the underlying principle is the same: the judicial system's interest in finality and efficient adjudication demands that parties should not be allowed to relitigate issues that have had a fair opportunity to contest. Id. Indeed, "failure to follow this rule would lead to the bizarre result . . . 'that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" Id. (quoting Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981)). This doctrine bars reconsideration of an issue, not because the appellate

---

(...continued)

if it could be found that the retention clause of my Order was broad enough to confer subject matter jurisdiction over GALC's claims against Republic.

-8-

court has actually ruled on it, but because the party had the opportunity to request appellate consideration and having failed to do so, has waived any subsequent right to reconsideration. Langer v. Presbyterian Medical Center of Philadelphia, 1995 WL 395937 at *4 (E.D. Pa. July 3, 1995). Thus, GALC "having made the decision, for whatever reason, not to appeal [the second basis of my] decision . . . [this decision] remain[s] the law of the case." Mellon Bank, N.A., v. United Bank Corp. of NY, 1994 WL 722003 at *8 (N.D.N.Y. 1994) (*citing* Cowgill).

Nonetheless, as application of the law of the case doctrine is discretionary with the court, I am not precluded from reconsidering the second basis for my decision. In re RBGSC Investment Corporation, 253 B.R. 352, 363-64 (E.D.Pa. 2000)(*quoting* Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391 (1983) that "[l]aw of the case doctrine directs a court's discretion, it does not limit the tribunal's power"). As the District Court has remanded the Modification Motion to this Court for a hearing, it has invited me to exercise that discretion to reconsider the merits of GALC's request. Accordingly, at the scheduled hearing I focused on the controlling issue, i.e., what was this Court's legal basis to modify the parties' Stipulation as requested by GALC, and gave the parties the opportunity to supplement the record and present argument.[11] Notwithstanding the clarity of what I viewed

---

[11] I asked GALC if it wished to present any witnesses or documents in support of its position. GALC elected not to do so, relying on legal argument that regrettably did not focus on the issue I identified. However, I gave it, as well as Republic which opposed the Modification Motion, the opportunity to supplement the documentary record by February 21, 2003 and to provide memoranda of law. There were no objections to this procedure.

to be dispositive of its request,[12] GALC has offered no basis for me to reconsider my conclusion that I may not modify the Stipulation as it demands. I therefore affirm the second basis for my June 12 ruling, as explained in more detail below, recognizing that GALC may return to its alternative venue in Delaware where there is no reason for the State Court to suspend proceedings any longer.

### A.

Assuming without concluding that GALC has rights under the Stipulation as a third party beneficiary, GALC has never shown that it is entitled to reformation of that contract. Under Delaware law, reformation of a contract is appropriate only when "the contract does not represent the parties' intent because of fraud, mutual mistake, or in exceptional cases, a unilateral mistake coupled with the other parties,' knowing silence." Chase Manhattan Bank v. Iridium Africa Corp., 197 F. Supp.2d 120, 139 (D. Del. 2002); Emmert v. Prade, 711 A.2d 1217, 1219 (Del.Ch. 1997) (both *quoting* James River-Pennington Inc. v. CRSS Capital, Inc., C.A. No. 13870, 1995 WL 106554 (Del.Ch., March 6, 1995)). Here GALC has never alleged that the Stipulation reflects anything but the intent of the parties. Rather GALC argued at the hearing that I may reform a contract based upon the Bankruptcy Court's broad equitable powers. Not surprisingly, GALC fails to provide any authority that my

---

[12] GALC's post-hearing submission simply ignores my specific request that it provide support for its position that I can modify the Stipulation as it demands . Its memorandum of law simply counters Republic's Cross-Motion that I abstain. GALC's position has been undermined by its failure to understand the role of this bankruptcy court as distinguished from the role of a state court of general jurisdiction. In somehow viewing that the identical issues are presented in this and the State Court, GALC has failed to make a case for its cause.

powers cut such a broad swath. In any event, as there was no evidence presented in connection with the Modification Motion or the Stipulation, I would not have the slightest notion about the equities in this matter.

At the February 10 hearing, GALC's counsel argued for the first time[13] that by incorporating the Stipulation into the June 12 Order, I now have the ability to modify it pursuant to Federal Rule of Civil Procedure 60, applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024. GALC provides no authority for this proposition either. My own research indicates that numerous circuit courts, including our own, have held that Rule 60 (aptly titled "Relief From Judgement or Order") may only be used to set aside a judgment or order, not to grant affirmative relief such as GALC is requesting. See U.S. v. One Toshiba Color Television, 46 F.3d 147, 158 (3d Cir. 2000) (holding that forfeiture order may be vacated under Rule 60(b) but may not be used to provide damages stemming from forfeiture); Adduono v. World Hockey Ass'n, 824 F.2d 617, 620 (8th Cir. 1987) (concluding that district court is limited to setting aside its order and cannot impose additional affirmative relief); U.S. v. $119,980, 680 F.2d 106 (11th Cir. 1982) (same);[14] United States v. One 1961 Red Chevrolet Impala Sedan, 457 F.2d 1353, 1356 (5th Cir. 1972). As the Third Circuit

---

[13] I use the term "argued" loosely. The sum of this argument was counsel's statement that Rule 60, "among other things," allows me to modify the Stipulation. This was the extent of his invocation of the Rule, mention of which appears nowhere in GALC's subsequent memorandum.

[14] U.S. v. $199,980, supra is directly on point. There a court-approved stipulation between the United States Customs Service and the claimants to $199,980 provided that the Customs Service would retain half and give the other half to the claimants. Subsequent to entry of that order, it was learned that the IRS had issued notices of levy on the money. Pursuant to a Rule 60(b) motion, the district court amended its order to require the Customs Service to remit the other half to the IRS. The Court of Appeals for the 11th Circuit reversed, holding that Rule 60(b) only authorized the district court to set aside its order. The Rule did not provide authority for the affirmative relief of modifying the stipulation and ordering the redistribution. Id.

Court of Appeals noted in One Toshiba Color Television:

> Though the vacatur of the earlier judgment will be a powerful weapon . . . it will not decide the issue. [The 60(b) movant] would have to act within the confines of whatever legal framework surrounds the legal or equitable remedy he will elect to pursue.

213 F.3d at 158.  Thus, even if GALC met its burden of showing entitlement under Rule 60(b) – something it has not even attempted here – at best, I could vacate my order approving the Stipulation.[15]  GALC would still need an independent basis for the affirmative relief it seeks in the Modification Motion, i.e., reformation of a contract, a basis which I have already concluded is lacking under applicable Delaware law.

### B.

While not necessary to my ruling but rather an issue that is squarely presented in the State Court Action, I also question GALC's assumption that it has rights under the Stipulation as a third party beneficiary.[16]  Needless to say, if that document to which they are not a signatory and which expressly excluded the Equipment from the personal property being conveyed by Debtor to Republic, Stipulation ¶5(g), confers no legal rights on GALC, it is not a proper party to seek reformation of the Stipulation.

Under Delaware contract law, which governs the Stipulation,[17] in order to qualify as

---

[15]  Needless to say, I would not do so since the provisions that affect GALC are but a minor affair in the context of the undertakings of the Stipulation.

[16]  Its counsel stated this several times during the February 10 hearing, and it is alleged in GALC's Complaint in the State Court Action.  As with the other issues relevant to the resolution of this contested matter, GALC has provided no factual or legal support for this conclusion.

[17]  A stipulation is interpreted and construed consistent with the fundamental precepts of contract law.  Washington Hospital v. White, 889 F.2d 1294, 1300 (3d Cir. 1989).  The Stipulation
(continued...)

a third party beneficiary, GALC must show that: (1) the contracting parties intended GALC

to benefit from the contract;[18] (2) the benefit was intended as a gift or in satisfaction of a

pre-existing obligation to GALC; and (3) the intent to benefit GALC must be a material part

of the contract's purpose. E.I. Dupont De Nemours and Co. v. Rhone Poulenc Fiber and

Resin Intermediates, S.A., 269 F3d. 187, 196 (3d Cir. 2001) (citing Guardian Const. Co. v.

Tetra Tech Richardson, Inc., 583 A.2d 1378, 1386 (Del. Super. Ct. 1990).

Applying this standard to the Stipulation as a whole, see Northwestern National Ins.

Co. v. Esmark, Inc., 672 A.2d 41, 43 (Del. Super. Ct. 1996) (contracts are to be interpreted

as a whole), I that note that the overwhelming purpose of the Stipulation is to give the Debtor

additional time to save the Hotel from foreclosure in consideration for Debtor's payment to

Republic of $350,000 and commitment to a drop dead date for final payment with detailed

agreed procedures for transferring the Hotel to Republic if the Debtor were unable to pay the

---

(...continued)

provides that, "[t]he substantive laws of the State of Delaware shall apply to the terms of this
stipulation." Stipulation ¶16. It is a fundamental precept of contract law that where the parties to
a contract agree on the law that will govern disputes arising from a contract, a court shall honor that
choice of law provision subject to limited exceptions. J.S. Alberici Construction Co., Inc. v. Mid-
West Conveyer Co., Inc., 750 A.2d 518, 520 (Del. 2000); accord Nationwide Mut. Ins. Co. v. West,
807 A.2d 916, 920 (Pa. Super 2002) (stating that, "[i]n contract disputes, Pennsylvania courts
generally honor the parties' choice of law provisions."). As neither GALC nor Republic contend that
Delaware law does not apply, I need not discuss these exceptions.

[18] It must be the intent of all the contracting parties to benefit the third party. American
Financial Corp. v. Computer Science Corp., 558 F. Supp. 1182, 1184 (D. Del. 1983). While I could
speculate that the Debtor's principals may have had an interest in benefitting GALC if they
guaranteed the lease, no evidence was presented on this issue, and certainly no evidence was
presented that the Debtor, Republic or the Committee had any intent to do so. "To allow the
unilateral intent of one party to determine the existence of a third-party beneficiary would thwart the
power that contracting parties should have to control their legal relations, particularly in a
commercial setting." Id.

negotiated payoff amount. This Stipulation settled the Republic Stay Motion seeking to foreclose on the Hotel, a motion that had nothing to do with GALC or the Equipment. GALC had already received all the relief it was entitled to from this Court before the Stipulation was negotiated pursuant to the GALC Stay Motion. Indeed, the background section of the Stipulation only describes the disputes between the Debtor and its principals and Republic, and specifically states that the parties to the Stipulation seek to amicably resolve their disputes. GALC and the Equipment are mentioned only peripherally, in paragraph 5 (g) which excludes the Equipment from the Bill of Sale and in paragraph 6, quoted in full above, which provides GALC with notice and twenty days to remove the Equipment from the Hotel after the deed is recorded by Republic.[19]

From the four corners of the Stipulation, I find it incomprehensible that the parties to the Stipulation intended to benefit GALC, much less that such a benefit was a material part of the Stipulation's purpose. Certainly the Debtor which at the point the Equipment was to removed no longer owned the Hotel, would have no interest at all, a fact confirmed by its counsel's statement to this Court and failure to participate in this contested matter. Nor did GALC, despite opportunity at the hearing and thereafter to add to the record, present any extrinsic evidence to the contrary. GALC has failed to even enunciate the benefit that it allegedly received, much less offer any evidence that such benefit was anything but

---

[19] The only other reference to GALC in the Stipulation is in the background section Paragraph "A", stating that the Debtor leases substantially all the kitchen equipment in the Hotel from GALC.

incidental.[20]   GALC would therefore appear to have no enforceable rights under the Stipulation for which it could seek modification.

## C.

Finally, I will address Republic's Cross-Motion which seeks bankruptcy court abstention from adjudication of GALC's claims against it. Notably I can only abstain from adjudicating claims actually before me.   See note 10 supra. However, GALC has never requested that I enforce the terms of the Stipulation or award damages for Republic's alleged breach of the Stipulation. That request is now pending before the Delaware Chancery Court in the State Court Action. Rather GALC has asked that I modify the Stipulation to provide them with additional time to recover the Equipment. I have refused to do so. As I cannot abstain from hearing claims that are not before me, the Cross-Motion shall therefore be denied as unripe. [21]

---

[20] Since the Stipulation allowed Republic time to decide whether to assume the Equipment lease and then imposed a deadline on GALC for removing its Equipment from the Hotel if Republic did not do so, it could be construed as benefit conferred on Republic and a restriction imposed on GALC, particularly as the consequence of failure to timely remove the Equipment is a deemed abandonment. Absent any evidence, the intent of the parties regarding the Equipment is speculative at best.

[21] Republic's counsel expressed some understandable confusion about the issues being addressed by this Court at the remand hearing. It was that confusion that motivated me to allow the parties to present post-hearing submissions. The Cross Motion either evidences that confusion or reflects an overabundance of caution since it prematurely addresses the relief Republic would seek if I were to modify the Stipulation.

-15-

## CONCLUSION

I initially rejected the Modification Motion on two separate bases. By choosing only to appeal my jurisdictional ruling, GALC did not challenge the other basis for my decision which became the law of the case. However, on remand of the District Court for a hearing on the Modification Motion, I exercised my discretion not to be so bound. Yet GALC has failed to provide me with any authority or evidence which compels a departure from my prior conclusion. As such, the Modification Motion must fail again. Long ago I gave GALC all the relief that I could when I lifted the automatic stay to allow it to exercise its state law remedies with respect to the Equipment.. Whatever rights GALC has to the Equipment arise out of state law, not the Stipulation. Ironically, GALC's redress of those rights has been delayed by its own action in seeking to adjudicate those rights here rather than moving forward in the Delaware State Court where its Complaint has been pending now for almost one year.

Deaïe W. Sig

DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated:    April 18, 2003

-16-

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| WILMINGTON HOSPITALITY LLC, | : | Bankruptcy No. 01-19401DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 8th day of April 2003, upon consideration of Great American Leasing Corporation's Motion for Modification of the Stipulation (the "Modification Motion"), pursuant to Order of the District Court for the Eastern District of Pennsylvania dated December 2, 2002 and upon consideration of the Objection thereto and Cross-Motion for Abstention (the "Cross-Motion") of Republic Bank ("Republic"), and after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that both the Modification Motion and Cross-Motion are **DENIED**.

DIANE WEISS SIGMUND
United States Bankruptcy Judge

Courtesy copies from
Chambers mailed to:

**COUNSEL FOR GREAT AMERICAN LEASING**

JoAnn Needleman, Esquire
One Penn Center, Suite 935
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103

**COUNSEL FOR REPUBLIC BANK**

Joel C. Shapiro, Esquire
BLANK ROME COMINSKY & MCCAULEY
One Logan Square
Philadelphia, PA 19103

**COUNSEL FOR DEBTOR**

Albert A. Ciardi, III, Esquire
CIARDI, MASCHMEYER, KARALIS, P.C.
1900 Spruce Street
Philadelphia, PA 19103

**UNITED STATES TRUSTEE**

Dave P. Adams, Esquire
Office of the U.S. Trustee
601 Walnut Street
Curtis Center - Suite 950 West
Philadelphia, PA 19106